## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 3561 | **DATE** | 7/6/2007 |
| **CASE TITLE** | Szczypta, et al vs. Shields | | |

**DOCKET ENTRY TEXT**

Plaintiffs' Complaint is dismissed with prejudice.

■[ For further details see text below.]   Notices mailed by Judge's staff. Mailed AO450

### STATEMENT

Plaintiffs Marie Szczypta, Karyn Mehringer, and Sheila Mannix have brought a *pro se* "verified emergency complaint for temporary restraining order" under 42 U.S.C. § 1983 against Karen Shields, an Associate Judge in the Circuit Court of Cook County, and Timothy Evans, the Chief Judge in the Circuit Court of Cook County. Each Plaintiff is proceeding *in forma pauperis*. (R. 17-1, Order of July 2, 2007.) For the reasons stated below, Plaintiffs' Complaint is dismissed with prejudice.

### LEGAL STANDARD

Under 28 U.S.C. §1915(a) ("Section 1915"), the Court may authorize a plaintiff to proceed *in forma pauperis* if she is unable to pay the mandated court fees. Plaintiff Mannix's application indicates that she is self-employed, but does not earn any salary or wages because her work is "mostly pro bono." (R. 6-1, Mannix IFP App. at 1.) Plaintiff Mehringer avers that she earns $800 in monthly wages. (R. 7-1, Mehringer IFP App. at 1.) Plaintiff Szczypta avers that she earned $1400 in monthly wages at her most recent job, but further avers that she currently is unemployed. (R. 8-1, Szczypta IFP App. at 1.) Plaintiffs satisfy the financial criteria for receiving *in forma pauperis* status, and, on July 2, 2007, the Court granted Plaintiffs' motions for IFP status and summons have been served and returned executed. (R. 17-1, Order of July 2, 2007; R. 15-1, Summons Returned Executed to Def. Evans; R. 16-1, Summons Returned Executed to Def. Shields.)

In determining whether an *in forma pauperis* action may continue to go forward, however, the Court must look beyond a plaintiff's financial status. Section 1915 provides that "court shall dismiss the case *at any time* if the court determines" that a complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (emphasis added); *see also Wartman v. Branch 7, Civil Division,*

## STATEMENT

*County Court, Milwaukee County, State of Wis.*, 510 F.2d 130, 134 (7th Cir. 1975) (if a district court judge initially grants an *in forma pauperis* petition "the matter cannot be dismissed until summons has issued"). In doing so, the Court must apply the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000); *see also Alston v. Debruy*, 13 F.3d 1036, 1039 (7th Cir. 1994) (Section 1915 allows judges to dismiss a claim based on an indisputably meritless legal theory); *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) ("*Sua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading.").

Aside from the bases for dismissal in Section 1915, a district court must evaluate complaints to ensure that they lie within the court's jurisdiction. *See Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005) ("Jurisdiction is the power to declare law, and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction *sua sponte*, they must." (internal citation and quotation omitted)). Indeed, "[i]t is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) (internal quotation omitted).

After conducting a thorough review of Plaintiffs' allegations, the Court finds that most of the Complaint falls outside the Court's subject matter jurisdiction, and that to the extent it does not the Complaint nonetheless fails to state a claim upon which relief can be granted. Accordingly, the Court dismisses the Complaint.

## ANALYSIS

### I. Facts

The Complaint alleges a variety of misconduct stemming from a divorce proceeding in the Circuit Court of Cook County. (*See* R. 1-1, Compl. at ¶¶12-14.) Specifically, the Complaint alleges that Defendant Shields "initiat[ed] [] a verifiably false police report," (*id.* at ¶3) that has resulted in Plaintiffs' "personal information being turned over to the Illinois Statewide Terrorism Intelligence Center and the creation and widespread dissemination of a verifiably fraudulent 'Intelligence Bulletin' with [Plaintiffs'] driver's license pictures and personal information . . ." (*Id.* at ¶4; *see also id.* at ¶5 (alleging that Plaintiff Mannix only narrowly escaped being framed and falsely arrested on various dates in early 2007).) The Complaint further alleges that, on the afternoon after the Complaint's filing, Plaintiff Szczypta was going to have a "heart attack and/or stroke . . . as the direct result of a sham trial for supervised visitation as a result of the false allegations against [her] . . ." (*Id.* at ¶5.) The Complaint further alleges that Defendant Shields has acted improperly during the course of pending state court proceedings:

> Defendant Shields re-scheduled the sham trial one month earlier in a *sua sponte* order entered by Defendant Shields on May 31, 2007 in alleged direct retaliation for Plaintiff Szczypta filing an interlocutory appeal of Defendant Shields improper transfer of a self-disqualification motion to another judge for adjudication as a motion for substitution of judge for cause. Said motion attached the verifiably false police report initiated by Defendant Shields on August 16, 2006 . . . Defendant Shields made public in the report her belief that Plaintiff Szczypta poses a felony criminal physical threat to the judge. However, Defendant Shields refused to self-disqualify on May 17, 2007 despite her irrefutable lack of impartiality . . .

**STATEMENT**

(*Id.*) The Complaint further alleges that "[m]ultiple allegedly willful, wanton, and malicious criminal acts beginning on August 17, 2006 to the present day have ensued as a direct result thereof by numerous employees, agents, and/or persons acting on behalf of the Circuit Court of Cook County under the authority, control, and full knowledge of Defendant Evans . . ." (*Id.* at ¶8.) This misconduct allegedly includes "harassment, intimidation, and threats of false incarceration and prosecution in court documents, in the Daley Center, and at the home of Plaintiff Mehringer by employees, agents, and persons acting on behalf of the Circuit Court of Cook County including but not limited to judges, attorneys, clerks, administrative assistants, Cook County Sheriff's Deputies, and Cook County Sheriff's Police Detectives as will as employees, agents, and persons acting on behalf of the Lake County Circuit Court against Plaintiff Mannix." (*Id.*; *see also id.* at ¶11 (requesting representation from the United States Attorney for alleged crimes under 18 U.S.C. §§1512-14).)

As noted above, the Complaint alleges that Defendants are judges in the Circuit Court of Cook County. Defendant Shields is an Associate Judge that has presided over Plaintiffs' cases in the Domestic Relations Division of the Circuit Court of Cook County from August 2000 to the present. (*Id.* at ¶15.) Defendant Evans is the Chief Judge of the Circuit Court of Cook County and, according to the Complaint, Judge Evans is the Head Administrator of the Circuit Court of Cook County employees, agents, and persons acting on its behalf and "has been fully informed of events detailed [in the Complaint] since September 2005 . . ." (*Id.* at ¶16.)

**II.    The Complaint Falls Outside the Court's Subject Matter Jurisdiction and Otherwise Fails To State a Claim**

The Complaint fails for several reasons, any of which alone requires dismissal under Section 1915. *See Alpern v. Lieb*, 38 F.3d 933, 934 (7th Cir. 1994) (complaint against state court judge seeking a stay of the divorce action pending in state court properly dismissed as frivolous because "[t]he domestic relations exception to federal jurisdiction, the *Rooker-Feldman* doctrine, [28 U.S.C.] §2283, principles of claim and issue preclusion, and principles of judicial immunity exclude any possibility of relief in federal court" (internal parentheses omitted)). The Court notes at the outset that it is unclear from the allegations whether the underlying divorce proceedings are ongoing or whether that litigation has resulted in a final judgment of some sort. Either way, much of the Complaint falls outside the Court's jurisdiction and, to the extent it does not, it nonetheless fails to state a claim for relief.

First, to the extent the Complaint alleges injuries resulting from ongoing state-court divorce proceedings the Court cannot reach the merits of that dispute. This is the case because "[t]he domestic relations exception to federal jurisdiction prevents the district court from hearing . . . disputes involving divorce, custody or alimony issues" because those disputes are within the exclusive province of the state courts. *Allen v. Allen*, 48 F.3d 259, 261-62 (7th Cir. 1995) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992)); *see also Alpern*, 38 F.3d at 934 (domestic relations exception barred suit seeking stay of divorce proceeding in federal court and subsequent damages suit against state judge). This carve-out from federal jurisdiction does not necessarily extend to *all* issues incidental to domestic relations proceedings, *see Ankenbrandt*, 504 U.S. at 704, but, at a minimum, it prohibits federal courts from hearing "cases involving the issuance of a divorce, alimony, or child custody decree," *id.*, and any claims that are "inextricably intertwined" with these core divorce or custody issues. *Allen*, 48 F.3d at 262 (further noting that the domestic relations exception applies to Section 1983 actions); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998) ("The domestic relations exception has a core and a penumbra. The core is occupied by cases in which the plaintiff is seeking in federal district court under the diversity jurisdiction one or more of the distinctive forms of relief associated with the domestic relations

| STATEMENT |
|---|

jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support. . . . The penumbra of the exception consists of ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding."); *see also Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) ("The best contemporary reasons for keeping federal courts out of the business of . . . granting divorces and annulments . . . [and] approving child adoptions, and the like . . . are as persuasive when a suit is filed in federal court on the basis of federal law as when it is based on state law").

Here, Plaintiffs' claims fall within the domestic relations exception to federal court jurisdiction. They seek, in effect, to unwind the state court divorce and custody proceedings litigation: "Plaintiffs . . . seek relief in the form of [injunctive relief] . . . re-establish[] [] the status quo to the last peaceable moment before the involvement of Associate Judge Karen G. Shields in the Plaintiffs' state court proceedings and the transfer of the Plaintiffs' cases to venues for which there are no legitimate objections for further proceedings under the direct supervision of the Chief and/or Presiding Judges in those venues." (R. 1-1, Compl. at 35-36 (also requesting injunctive relief "against ongoing violations of the Plaintiffs' constitutional and civil rights by state court agents located in and/or acting on behalf of state court agents located in the Richard R. Daley Center" and "representation by the government for the jury trial for preliminary injunction and protection by the government under FRCP Rule 65 and 18 U.S.C. §§1512, 1513, 1514").) Such relief, however, lies outside the Court's jurisdiction because unwinding the state court proceedings would have the practical effect of compromising or voiding existing divorce and custody decrees and would possibly inhibit the state court's ability to render similar decrees going forward in the underlying proceedings.

Second, even if the domestic relations exception did not apply, the Court nonetheless would have to abstain from hearing the case (or interjecting itself into ongoing state-court divorce litigation) under the *Younger* abstention doctrine. The *Younger* doctrine requires federal courts to abstain from enjoining ongoing state proceedings that (1) are judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-32, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982) (interpreting *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). The Complaint here satisfies each of these elements. The Complaint alleges injuries related to events in ongoing state-court proceedings and specifically requests the Court to intervene in those proceedings. (R. 1-1, Compl. at 35-36.) In addition, domestic-relations litigation, including divorce-related litigation, is an area of significant state concern from which the federal judiciary should generally abstain under *Younger*. *See, e.g., Moore v. Sims*, 442 U.S. 415, 434-35, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979) (noting that "[f]amily relations are a traditional area of state concern"); *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) (states have an important interest in pending divorce litigation). Finally, the state court system offers an adequate opportunity for review of constitutional claims, *see Middlesex*, 457 U.S. at 432; *Brunken v. Lance*, 807 F.2d 1325, 1330-31 (7th Cir. 1986); *see also Alpern*, 38 F.3d at 934 ("A litigant dissatisfied with the decision of a state tribunal must appeal rather than file an independent suit in federal court."), and the Complaint does not present extraordinary circumstances. *See Mannix v. Machnik*, __ F.3d __, Nos. 06-2120, 06-2369, & 06-2435 (7th Cir. July 3, 2007) (discussing the applicability of the Anti-Injunction Act, 28 U.S.C. § 2283 and noting: "Whatever wriggle room is allowed by *Mitchum v. Foster*, 407 U.S. 225 (1972), which holds that §1983 is an exception to §2283, is cabined by *Penzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987), which adds that federal courts must abstain from disrupting ongoing state litigation in all but the most extraordinary situations. There is nothing extraordinary about Mannix's situation." (some internal citation omitted)) (nonprecedential disposition).

Third, mindful that the Anti-Injunction Act does not apply to Section 1983 suits, *Mitchum v. Foster*,

**STATEMENT**

407 U.S. 225 (1972), and mindful that a complaint need not identify the correct legal theory, *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (a "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal"), the Court notes that the Anti-Injunction Act would preclude relief on any other (non-Section 1983) claims to the extent the Complaint could support other legal theories. *See Int'l Airport Centers, LLC v. Citrin*, 455 F.3d 749, 752 (7th Cir. 2006) ("The [Anti-Injunction] Act forbids, with narrow exceptions, a federal court's enjoining litigation in a state court.").

Fourth, if the underlying state-court litigation has ended in a final judgment – the Complaint in many places refers to "post-divorce proceedings" – the *Rooker-Feldman* doctrine would bar federal district review for lack of subject matter jurisdiction. *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) ("Simply put, the *Rooker-Feldman* doctrine precludes lower federal court jurisdiction over claims seeking review of state court judgments because no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." (internal quotation and punctuation omitted)); *GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728-29 (7th Cir. 1993) (when a plaintiff has no claim independent of the state court's adverse decision, or when the injury about which a plaintiff complains "was caused *by* the [state court] judgment," the *Rooker-Feldman* doctrine dictates that a federal district court does not have subject matter jurisdiction (emphasis original)); *see also Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (a plaintiff cannot avoid the *Rooker-Feldman* doctrine by "casting [a] complaint in the form of a civil rights action," or by adding claims of constitutional deprivations). Indeed, the Seventh Circuit recently ruled in a similar case (brought by Plaintiff Mannix) that "any relief from the adverse decision [in the state-court proceedings] must be pursued through the state appellate system (with the option of seeking certiorari from a final judgment)." *Mannix v. Machnik*, __ F.3d __, Nos. 06-2120, 06-2369, & 06-2435 (7th Cir. July 3, 2007) (nonprecedential disposition; parentheses original). The *Rooker-Feldman* doctrine applies equally to all of Plaintiffs' claims, again to the extent they challenge a final judgment of the state court.

Fifth, the claims that Plaintiff Mannix brings against Defendant Shields are barred by *res judicata* because they could have been brought in Mannix's previous federal litigation against Shields. *See Mannix v. Machnik*, No. 05 C 7232, 2006 WL 794764, *1 (N.D. Ill. March 24, 2006) (granting motion to dismiss complaint that named Karen Shields as a defendant); *Mannix v. Machnik*, __ F.3d __, Nos. 06-2120, 06-2369, & 06-2435 (7th Cir. July 3, 2007) (nonprecedential disposition); *see also Highway J Citizens Group v. U.S. Dept. of Trans.*, 456 F.3d 734, 741 (7th Cir. 2006) ("*res judicata* 'bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action'" (quoting *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995))). The previous suit also would likely offer an insurmountable defense for Defendant Evans, as well, even though he was not a party to that prior suit. *See, e.g., Newman v. State of Indiana*, 129 F.3d 937, 942 (7th Cir. 1997) ("[n]onparties are usually, and here would surely be, allowed to use collateral estoppel defensively, and thus plead the defeat of the [a plaintiff's prior] claim, fully litigated in the Indiana court system, as a defense to the present suit").

Sixth, to the extent the Complaint seeks damages, it fails to state a claim because both named Defendants, as sitting judges, are entitled to absolute judicial immunity, a "common law doctrine shield[ing] judges from civil liability for their judicial actions." *Brokaw v. Mercer County*, 235 F.3d 1000, 1015 (7th Cir. 2000); *see also Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S. Ct. 1213, 1217 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction"). "[J]udicial immunity is immunity from suit, not just from assessment of damages," *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991), and "a judge will not be deprived of immunity even if the action was in error, was done maliciously, was in excess of his authority, and even if his exercise of authority is flawed by the commission of grave procedural

| STATEMENT |
|---|

errors." *Brokaw*, 235 F.3d at 1015 (internal citation omitted). Moreover, judicial immunity "is fully applicable in suits under 42 U.S.C. § 1983 alleging deprivations of constitutional rights." *Briscoe v. LaHue*, 663 F.2d 713, 722 (7th Cir. 1981).

"[I]mmunity is overcome in only two sets of circumstances." *Mireles*, 502 U.S. at 11. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Id*. (internal citation omitted). "To determine whether a judge's act is 'judicial,' the court looks at 'the nature of the act itself, *i.e* ., whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.* whether they dealt with the judge in his judicial capacity.'" *Id.* at 12 (internal quotation, citation, and certain punctuation omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (citation omitted). A judge, that is, "will be subject to liability *only when* he has acted in the *clear absence of all jurisdiction*." *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 1105, 55 L. Ed. 2d 331 (1978) (internal quotation omitted; emphasis added). "What matters for [judicial] immunity [ ] is subject-matter jurisdiction," *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995) (citing *Stump*), which "must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356-57.

The exceptions to judicial immunity do not apply here. First, the conduct at issue arises from judicial acts. (*See, e.g.,* R. 1-1; Compl. at ¶¶1-11.) Plaintiffs' alleged harm results solely and directly from Judge Shields' ruling on motions, conducting a trial, and initiating a police report about acts occurring during proceedings and at the courthouse (*see id.*, Ex. E) – functions normally performed by a judge, and to the expectations of the parties. *See, e.g., Davis v. City of Chicago*, No. 00 C 4432, 2001 WL 467932, *4 (N.D. Ill. 2001) ("A judge's decision in a case before him or her is considered a judicial action"); *Barrett v. Harrington*, 130 F.3d 246, 260 (6th Cir. 1997) ("a judge instigating a criminal investigation against a disgruntled litigant who has harassed her is a judicial act"); *see also, e.g., Mireles*, 502 U.S. at 11-15, 112 S. Ct. at 288-89 (judge was entitled to judicial immunity for claims resulting from judge ordering police officers to seize attorney and force him to appear); *Brookings v. Clunk*, 389 F.3d 614, 622 (6th Cir. 2004). Second, Judge Shields did not act in the clear absence of all jurisdiction in rendering orders in the underlying proceedings. *See Partipilo v. Partipilo*, 331 Ill. App. 3d 394, 400, 264 Ill. Dec. 440, 445, 770 N.E.2d 1136, 1141 (Ill. App. Ct. 2002) ("A trial judge sitting in the domestic relations division of the circuit court has jurisdiction to hear all justiciable matters."); *see also* Ill. Const. Art. VI, § 9 (Illinois "Circuit Courts shall have original jurisdiction of all justiciable matters. . ."). Even if Judge Shields wrongly failed to recuse herself or wrongly failed to transfer Plaintiffs' cases, those mistakes, at most, constitute procedural errors and are *not* acts taken in the clear absence of jurisdiction. *See, e.g., Brokaw*, 235 F.3d at 1015; *see also, e.g., Dellenbach v. Letsinger*, 889 F.2d 755, 760 n.6 (7th Cir. 1989). In addition, as to Judge Evans, the Complaint is largely silent and, in any event, fails to allege conduct establishing that judicial immunity would not bar suit here. (*See* R. 1-1, Compl. at ¶8.) Thus, Plaintiffs' Complaint further fails to state a claim because Defendants are entitled to judicial immunity.

## CONCLUSION

For the above reasons, Plaintiffs' Complaint in large part falls outside the Court's subject matter jurisdiction and, to the extent Complaint does not, it otherwise fails to state a claim on which relief may be granted. As a result, the Court dismisses the Complaint with prejudice as required under 28 U.S.C. §1915(e)(2)(B)(ii). Further, *sua sponte* dismissal is also appropriate even absent Section 1915's applicability because any amendment to the Complaint would be futile.